UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                   Case No. 19-20216
                                                 Honorable Victoria A. Roberts

D-3 URIEL GALVAN-MACIEL,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO WITHDRAW GUILTY PLEA
## [ECF No. 549]

### I. INTRODUCTION

A federal grand jury indicted Uriel Galvan-Maciel ("Galvan-Maciel") and thirteen others for their participation in a drug distribution conspiracy. Galvan-Maciel pled guilty and is awaiting sentencing. On December 21, 2022, he filed a motion to withdraw his guilty plea. It is fully briefed.

An evidentiary hearing is not necessary. The Court **DENIES** the motion.

### II. BACKGROUND

During a criminal investigation into the Moreno-Ponce Drug Trafficking Organization ("DTO"), law enforcement executed a search warrant on 139 Cherry Valley Drive Inkster, Michigan. According to the Government, this was Galvan-Maciel's residence and a stash house for the DTO. Officers

1

discovered $140,000 and fraudulent identification at the home. Galvan-Maciel was present during the search and agreed to an interview. During the interview, he admitted his connection to the DTO, and law enforcement arrested him.

The Government soon discerned that Galvan-Maciel was unlawfully present in the country and charged him with Unlawful Re-Entry. He was also charged with possession of and distribution of child pornography, after images were discovered on his phone. Galvan-Maciel pled guilty to both charges.

In this second indictment, the Government charged Galvan-Maciel with two counts: (Count One) 21 U.S.C. § 846 – conspiracy to possess with intent to distribute a controlled substance; and (Count Three) 21 U.S.C. § 841(a)(1) – possession of a controlled substance with intent to distribute. Soon after the indictment, Galvan-Maciel began plea discussions with the Government. Sanford Schulman represented him.

Galvan-Maciel agreed to plead guilty to Count One, conspiracy to possess with intent to distribute controlled substances, including one kilogram or more of heroin, and 500 grams or more of cocaine. Galvan-Maciel appeared before this Court on November 4, 2020, to enter his guilty plea. However, he declined to plea and requested a new attorney. He said

he had bad communication with Schulman, and they disagreed about his possible sentence. The Court granted his request and appointed Elias Escobedo as Galvan-Maciel's new attorney.

Escobedo renewed plea discussions with the Government. These discussions focused on Galvan-Maciel's willingness to cooperate and his eligibility for a sentence reduction under the safety valve provision of 10 U.S.C § 3553. The parties reached a new agreement which contemplated a 120-month minimum sentence. The parties did not agree that Galvan-Maciel would receive a reduction under the safety valve provision. However, the Government left the door open for relief from the mandatory minimum sentence by suggesting it would make a Rule 35 motion post-sentence if Galvan-Maciel testified at one of his co-defendant's trials.

On April 26, 2021, Galvan-Maciel again appeared before this Court for a plea hearing. The Court asked him about Escobedo's representation, his understanding of the new plea agreement, his rights, and the consequences of his plea. Galvan-Maciel affirmed that Escobedo's representation was satisfactory. He said he understood the plea agreement, was aware of his rights, and knew the consequences of entering a guilty plea. He then gave this Court a factual basis for his plea. Satisfied by his answers, the Court accepted his guilty plea.

Following the hearing, his co-defendants—who simultaneously engaged in plea discussions with the Government—also accepted plea agreements (except fugitive Moreno-Ponce). Apart from Jason and Jamilie Ledesma, each of Galvan-Maciel's co-defendants received sentences significantly lower than the 120-month mandatory minimum he faced.

On November 5, 2021, Galvan-Maciel moved to terminate Escobedo as his counsel. He claimed Escobedo conspired to maliciously and purposefully suppress germane discovery materials. [ECF No. 369, PageID.2181]. He accused Escobedo of theft, deception, collusion, and fraud. *Id*. The Court granted this motion and appointed new counsel—Haralambos D. Mihas.

Mihas reviewed the discovery and engaged in new discussions with the Government, specifically regarding whether it would be willing to recommend relief from the statutory minimum sentence under U.S.S.G 5K1.1. However, since none of Galvan-Maciel his co-defendants would go to trial, the Government declined to move for any reductions in his sentence. Galvan-Maciel moved to withdraw his guilty plea.

### III. ANALYSIS

Galvan-Maciel argues his withdrawal from the plea is proper because: (1) it was not intelligently, voluntarily, or knowingly made since he was induced

by misleading information from his "initially retained attorney" regarding his sentence; (2) but for his initial counsel's misleading assistance, he would not have pled guilty and would have insisted on a trial; (3) his initial attorney unethically served as his translator and; (4) he is innocent and entitled to withdraw his plea under Federal Rule of Criminal Procedure 11(d). Galvan-Maciel also takes issue with the appellate waiver in the plea agreement. His arguments are unpersuasive.

### A. Galvan-Maciel Initial Counsel's Representation Is Not Relevant.

As a preliminary matter, Galvan-Maciel refers to the *initial* attorney throughout his brief. He claims that the initial attorney's misrepresentations caused his unsatisfactory plea agreement. However, this Court removed his initial attorney—Schulman—months before Galvan-Maciel entered into the plea agreement at issue now.

Thus, even if the Court accepted Galvan-Maciel's conclusory statements and ignored the record which plainly contradicts most of his assertions, it is of no consequence. Galvan-Maciel did not enter this plea under Schulman's representation. Escobedo represented him. Escobedo engaged in new plea discussions with the Government and reached the current plea agreement.

At the April 2021 plea hearing Galvan-Maciel had a chance to air any grievances with Escobedo's representation. He could have informed the Court of any issues, just as he did with Schulman. Instead, he affirmed Escobedo's satisfactory performance as his counsel. [ECF No.556, PageID.4007]. Accordingly, his first three arguments have no bearing on this current plea agreement and this motion.

Even if the Court construed the motion language as referring to Escobedo and raising an ineffective assistance of counsel claim, Galvan-Maciel does not present sufficient evidence. Furthermore, while the Court can consider claims of ineffective assistance of counsel at this juncture, such claims generally must be the subject of a habeas petition. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Galvan-Maciel offers only conclusory statements that his counsel misrepresented facts about his sentence. However, the record and his own words affirm Escobedo's effective performance regarding the plea. The Court asked Galvan-Maciel if he had any complaints about Escobedo's representation. He replied, "No, no, no." [ECF No. 556 PageID.4007]. The Court asked if he was satisfied with Escobedo's legal advice. He responded, "That's right." *Id*.

A defendant bears the burden to prove ineffective assistance of counsel. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Galvan-Maciel's conclusory and contradictory statements fail to carry that burden.

**B. Galvan-Maciel fails to establish a basis to withdraw his plea.**

Courts may permit defendants to withdraw guilty pleas before sentencing if they show a fair and just reason. Fed.R.Crim.P. 11(d). However, this rule does not allow withdrawal merely because the defendant believes he made a poor choice in pleading guilty. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996). It is the defendant's burden to provide the Court a basis to withdraw from the plea. *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004) And conclusory statements do not satisfy that burden. *United States v. Ford*, 15 Fed.Appx. 303, 310 (6th Cir.2001).

The Court considers several factors in determining whether the withdrawal of a plea is justified under Rule 11(d). Most relevant here are (1) the amount of time that elapsed between the plea and the motion to withdraw; (2) the circumstances underlying the entry of the guilty plea; (3) the defendant's nature and background; (4) the degree to which the defendant has had prior experience with the criminal justice system; and (5) potential prejudice to the Government if the motion to withdraw is granted. These factors support a finding to uphold the plea agreement.

First, there was a significant delay in time between the plea and this motion to withdraw. However, this can be attributed to the Government, as it waited to resolve pleas with other defendants. This factor weighs in favor of Galvan-Maciel. The remaining factors do not.

The circumstances underlying the plea support upholding it. Two different attorneys represented Galvan-Maciel before he pled. They explained the plea to him. He affirmed at the April 2021 hearing that the plea was entered into knowingly and fairly and that he understood the agreement. [EFC No.556, PageID.4007].

Next, Galvan-Maciel argues that his nature and background weigh in favor of withdrawing the plea because of his minimal education and capacity to understand the plea. However, that is not the case. Galvan-Maciel was sophisticated enough to request a new attorney when he was unsatisfied with his initial counsel. Also, he was quite vocal about what he understood during his plea hearings. [ECF No. 556, 558]. The record belies any argument that he was uneducated and helpless.

Galvan-Maciel also has experience in our criminal justice system, specifically with pleas. He is currently serving a 60-month term because he pled guilty to two separate offenses. Galvan-Maciel is familiar with the plea process and knows his rights.

Finally, the Government would be prejudiced if this Court allowed Galvan-Maciel to withdraw his plea. The Government settled a six-year investigation and entered into plea agreements with all but one of Galvan-Maciel's co-defendants. It would need to expend significant resources to compile and recall evidence and witnesses—some of which may no longer be viable.

### C. Galvan-Maciel Is Not Entitled to an Evidentiary Hearing

The Court need only hold an evidentiary hearing when the defendant's briefing provides an "adequate basis for relief." *United States v. Mayo*, 191 F.3d 453, at *2 (6th Cir.1999). If the defendant fails to do so, a hearing is not required. *Id*. Notably, conclusory assertions alone do not provide an adequate basis for relief. *Id.*

Galvan-Maciel's motion rests on mere conclusory statements. He fails to identify specific facts this Court can rely on to evaluate the need for an evidentiary hearing and whether he is entitled to withdraw from his plea.

Further, Galvan-Maciel only moved to withdraw his plea and request an evidentiary hearing once the Government declined to recommend a sentence below the mandatory minimum. The Sixth Circuit rejected this strategy under comparable circumstances in *United States v. Ford*, 15 Fed.Appx. 303, 310 (6th Cir.2001).

In *Ford*, the Government offered to move for a reduction in the defendant William Roberts' sentence if he provided substantial assistance. The Government did not promise to move for the reduction automatically but left the door open, depending on the information Roberts gave. Roberts relied on the possibility of a reduction and accepted a plea offer. Ultimately, the Government declined to move for a sentence reduction.

Roberts moved to withdraw from the plea. He argued that the Government wrongfully offered and then refused to move for a downward departure. He claimed that his plea was invalid. The Sixth Circuit rejected this argument. The *Ford* court acknowledged that both parties understood the terms of the agreement and it was enforceable even though the Government decided not to move for a reduction. The *Ford* court affirmed the district court's decision to deny the motion and not hold an evidentiary hearing.

This case is similar. Galvan-Maciel entered into an agreement with the Government. The Government left the door open for the *possibility* of a sentence reduction if he provided testimony at trial. However, since all the defendants pled, it declined to move for a reduction. Like the agreement in *Ford*, the Government's decision not to move for the reduction was always

an option and known to both parties. Galvan-Maciel stated at his plea hearing that he understood the terms of the agreement.

### D. The Appellate Waiver is Valid.

Galvan-Maciel's final argument is that the appellate waiver in the agreement makes the plea unconscionable.

Appellate waivers have long been upheld in this circuit so long as they are entered into knowingly and voluntarily. *United States v. Beals*, 698 F.3d 248 (6th Cir. 2012); *United States v. Bell*, 601 F. App'x 396 (6th Cir. 2015); *United States v. Altunar-Jimenez*, 809 F. App'x 319 (6th Cir. 2020). Galvan-Maciel entered the plea knowingly and voluntarily. The appellate waiver is valid.

## IV. CONCLUSION

The Court **DENIES** Galvan-Maciel Motion to Withdraw from the Plea Agreement. [ECF No.549].

**IT IS ORDERED**.

s/ Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: February 7, 2023

11